ing the intervention of the court by mandatory direction before the determination of the main issue.

The order appealed from must therefore be reversed, with $10 costs, and the motion denied, with $10 costs. All concur.

---

DUNN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. May 4, 1910.)

1. MASTER AND SERVANT (§ 145*)—INJURY TO SERVANT—RULES OF EMPLOYMENT—CONSTRUCTION.

A railroad maintained, midway of a mile-long siding, a telegraph station, from which a semaphore was operated, and adopted a rule that a white light indicated safety. An engineer on the main track discovered that a freight train running in the opposite direction was entering the siding, and the operator changed the signal of the semaphore, so that it displayed the white one. The engineer then put on steam and collided with the other train, which had not completely cleared the main track. The rear of the latter train displayed lights. *Held*, that the rule as to the white signal was not designed to protect the train on the main line from the rear end of the train entering the siding, for the telegraph operator could not tell when the main track was clear of the train entering the siding.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 288; Dec. Dig. § 145.*]

2. MASTER AND SERVANT (§ 240*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

A railroad maintained, midway of a mile-long siding, a telegraph station, from which a semaphore was operated, and adopted a rule that a white light indicated safety. An engineer running a train on the main track discovered that a train running in the opposite direction was taking the siding, and after blowing for a signal the operator changed the light to a white one, whereupon the engineer put on steam and moved faster, and collided with the rear of the train taking the siding. There were lights on the rear of the latter train and on the switch that would indicate whether the track was clear or not. The train taking the siding was running alongside of the train of the engineer. *Held*, that the engineer was guilty of contributory negligence as a matter of law, precluding a recovery for his death in the collision.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 752; Dec. Dig. § 240.*]

Appeal from Trial Term, Onondago County.

Action by Elizabeth F. Dunn, as administratrix of Thomas Dunn, deceased, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Hiscock, Doheny, Williams & Cowie, for appellant.
McGowan & Stolz, for respondent.

WILLIAMS, J. The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide event.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The action is for negligence. The accident occurred in a dark night on the West Shore division of the defendant's road, at a place known as the Seneca River siding, and resulted in the death of the plaintiff's intestate, Thomas Dunn. The siding in question was about one mile long, and was capable of holding 113 cars. Midway of the siding was a small telegraph station, and on either side of it, and 150 to 200 feet away, was a semaphore, operated from the telegraph station. The rules provided that a white light at night indicated safety; but such signal should not be given until it was known the route was clear. Dunn was running a freight train east, and his orders were to meet another freight train at this siding; he to keep the main track and the other train to take the siding. When Dunn approached the semaphore west of the station, the engine of the other train in the siding was nearly opposite him. His train was running without steam. The semaphore showed a red light. Dunn blew for the block or semaphore signal, and the operator changed the light to a white one. Thereupon Dunn put on steam and moved faster. His train consisted of 40 cars of coal. The other train had not gone entirely upon the siding when Dunn's engine came to the east end thereof, and his engine struck the eighth car ahead of the caboose, and in the collision he was killed. He evidently discovered before the collision that the other train was in his way, but too late to avoid striking it.

The trial court submitted two questions to the jury: (1) Was the defendant guilty of negligence, in that a white light signal was given to the deceased, indicating a clear track ahead, when the west-bound train had not fully left the main track and passed upon the siding? (2) Was the deceased free from any negligence contributing to the accident? The jury answered both questions in the affirmative, and rendered a general verdict for the plaintiff.

There was controversy on the trial as to what the white light signal meant at this siding. Did it mean merely that there was no train going east, ahead of Dunn's train, in the block, or did it also mean that the train that Dunn knew was passing west upon and along the siding had entirely cleared the main track? The evidence showed that the operator did not use the signal for the latter purpose, but only for the former; that he so understood its meaning under the rule. If the signal was intended to protect a train going east from a train going west upon the siding, then clearly the defendant was guilty of negligence, because it permitted its operator to disregard the rule in this respect, the same as though no such rule existed.

At the close of the charge there were suggestions made as to what was meant by the first question submitted in this respect, and as I understand it the conclusion reached was that the jury were to determine the meaning of the rule in the respect referred to. The defendant's counsel requested the court to charge that the rule was not designed to protect an east-bound train from the rear end of a west-bound train going upon the siding, that it had no application to two trains which were at this station, and were known to each other to be there. This request was refused. The court charged, on the request of defendant's counsel, that if the rule applied only to east-bound trains,

and not to a west-bound one going upon the siding, there could be no recovery.

The jury must have found that the rule was applicable to such west-bound train. I think this conclusion was wrong; that the rule was never intended to protect a train in the position of Dunn's from the rear end of another train, going upon the siding, when the trains were aware of the presence of each other. The telegraph operator was located a half mile from the east end of the siding. How could he tell when the rear of the train was clear of the main track? Dunn knew the other train was passing upon and along the siding. He exchanged signals with such train. Knowing the train was there, and that he could not safely pass the end of the siding until that train had entirely cleared the main track, he could tell much better than the operator when the main track was clear of that train. He had only to run along slowly, and keep his train under control, until he discovered the real condition of things there. The operator had no means of telling. These rules were not designed to protect trains, which were aware of each other's presence, against each other. I think this question as to the rules was one of law for the court; but, if one of fact for the jury, its determination thereof was erroneous as a matter of law, or was against the weight of the evidence.

I think, also, that Dunn was guilty of contributory negligence. There were lights on the rear of the west-bound train and upon the switch that would have indicated whether the tracks were clear or obstructed. If the night was so dark he could not see them, he should have held his train until he could see them, or learn what the condition of things there was. The west-bound train was running along just beside his, and he should have proceeded cautiously until he saw the rear end of it pass him, or knew it was clear of the main track. There is no justification for the claim that he might proceed blindly, relying upon the white light signal.

I do not think it necessary for us to consider or pass upon the question of assumed risk. Very likely that was a question for the jury, and its finding thereon should not be disturbed. All concur.